UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X   **DOCKET NO.: CV-21-6265**
EMERY FRANCOIS,

     Plaintiff,

   -against-

BRENTWOOD UNION FREE SCHOOL DISTRICT,
BRENTWOOD BOARD OF EDUCATION,     **COMPLAINT**
DR. BERGRE ESCORBORES, in his individual and
official capacity,

     Defendants.    *JURY TRIAL DEMANDED*
--------------------------------------------------------------X

  Plaintiff, **EMERY FRANCOIS,** by and through her attorneys, The Law Offices of Frederick

K. Brewington, states and alleges the following claims against the above-named Defendants as

follows:

## PRELIMINARY STATEMENT

  1.  This is an action for money damages against the BRENTWOOD UNION FREE

SCHOOL DISTRICT, BRENTWOOD BOARD OF EDUCATION, and DR. BERGRE

ESCORBORES for committing acts under color of laws and by depriving plaintiff of rights secured

by the Constitution and laws of the United States and the State of New York. Plaintiff alleges that

the Defendants unlawfully violated her civil, statutory, and Constitutional rights and that the

BRENTWOOD UNION FREE SCHOOL DISTRICT, THE BRENTWOOD BOARD OF

EDUCATION, DR. BERGRE ESCORBORES, in his individual and official capacity, and their

agents, servants and employees negligently, carelessly, and recklessly failed to properly supervise.

That Defendants fostered a toxic and hostile work environment that allowed for Plaintiff to be

discriminated against on the basis of her race and color.

2.     Specifically, that the BRENTWOOD UNION FREE SCHOOL DISTRICT, THE BRENTWOOD BOARD OF EDUCATION, DR. BERGRE ESCORBORES in his individual and official capacity, and their agents, servants and employees conspired to deprive Plaintiff of her constitutional rights by continually treating her differently from similarly situated white and Hispanic applicants for Brentwood Board of Education appointed job positions, in violation of her rights. Furthermore, Defendant ESCORBORES intentional created a hostile work environment and racially discriminatory targeting of Plaintiff to wrongfully claim that she was not a stalwart in her position as School Psychologist at District and deny her advancement.

## JURISDICTION AND VENUE

3.     Jurisdiction of this Court is invoked under 28 U.S.C. §§ 1331 and §§ 1343 and 42 U.S.C. §§ 2000(e).

4.     Venue herein is proper under 28 U.S.C. § 1391(b). Moreover venue is appropriate in the Eastern District of New York, as the Parties herein are located in the State of New York and the incidents alleged herein occurred in Suffolk County.

## PARTIES

5.     Plaintiff EMERY FRANCOIS (hereinafter "Plaintiff" or "Dr. Francois") is a Black and Haitian-American citizen of the United States, and a resident of the State of New York, County of Nassau who at all times relevant herein was and is an employee of the BRENTWOOD UNION FREE SCHOOL DISTRICT. Plaintiff, born on February 13, 1966, is 55 years old.

6.     The Defendant, BRENTWOOD UNION FREE SCHOOL DISTRICT (hereinafter "District") is a Public School District and is a duly constituted Municipal Sub-division of the State of New York.

2

7.      Defendant, BRENTWOOD BOARD OF EDUCATION (hereinafter "Board") was and is the policy making body consisting of elected officials of the BRENTWOOD UNION FREE SCHOOL DISTRICT.

8.      During all times mentioned in this Complaint, Defendant DR. BERGRE ESCORBORES (hereinafter "Escorbores"), is a state actor sued here in his individual and official capacity, was at all relevant times and upon information and belief, formerly the President of Brentwood Principals and Supervisors Organization (B.P.S.O.) and is currently the Principal of South Middle School in the BRENTWOOD UNION FREE SCHOOL DISTRICT.

## FACTS

9.      Plaintiff, EMERY FRANCOIS, is a Black and Haitian- American woman who was born on February 13, 1966.

10.     Plaintiff earned a high school diploma from Hillcrest High School in 1985. Furthermore, she received a Bachelor of Arts degree in 1990 from St. John University and Master of Science degree in the field of Psychology in 1993 from St. John University and a second Master's Degree in Administration from Touro College in 2004. Plaintiff has also earned thirty (30) additional Educational Credits, is a certified school psychologist, has a School District Administration (S.D.A.), School Administrator/Supervisor (SAS), and a Psychological Administration certification. Plaintiff is a duly licensed school psychologist in the State of New York. In June of 2020, Plaintiff earned her Doctor of Philosophy in Interdisciplinary Studies from Union Institute and University.

11.     Plaintiff was hired by the District in or about September of 1993 as a School Psychologist and was granted tenure effective September of 1996. Plaintiff has worked as a psychologist in the District's South Middle School and Freshmen Center for a combined total of over

3

twenty-eight (28) years.

12.     From 1993 until June of 2021, Plaintiff's core responsibilities as a school psychologist are to perform psychological testing and provide psychological counseling to the District Students.  In addition to her primary role, Plaintiff served  as a Brentwood Board of Education approved Chairperson for the District's annual review meetings for children that have Individualized Education Planning (I.E.P) who were serviced under Special Education, setting goals for each student. Plaintiff had also a part of the Instructional Support Team or I.S.T.

13.     In September of 2021, Dr. Francois was transferred from the Freshmen Center to the Special Services Building as the District Committee on Special Education Chairperson (District CSE), particularly servicing the Special Education students. Upon information and belief, the contact for the title that Dr. Francois is working under is still in negotiation between the Brentwood Teacher Association and the Superintendent.

14.     Dr. Francois has performed and continues to perform her role at District in an exemplary fashion as she has done for the entire twenty-eight (28) years she has been employed, despite having endured a hostile work environment, racially discriminatory actions, humiliation and embarrassment at District.

15.     As background, in or about September of 2015, Plaintiff learned about an opening for the administrative position of Coordinator of Health Psychology through a job posting advertised in her school building.

16.     In or about September or October of 2015, Plaintiff submitted an application consisting of her resume and other related documents for the position of Coordinator of Health Psychology to the Human Resources Office. Plaintiff was without a doubt qualified to obtain the

4

position.

17.     Plaintiff was contacted by a representative in Human Resources in regards to her application interview. In or about October or November of 2015, Plaintiff was first interviewed by a team consisting of Kimberly Fauci, who was the Director of Special Services, Defendant BERGRE ESCORBORES, who at the time was the President of the Brentwood Principals and Supervisors Organization, Kevin Coyne, who was the President of the Teacher's Union, John Agostini who was the Coordinator of Human Resources and Judy Burgos, who was a community member.

18.     Approximately one week after the initial interview, Plaintiff was subsequently interviewed by the then Superintendent, Dr. Levi McIntyre. During the interview, Plaintiff submitted a supplemental packet which consisted of her resume and other related documents in support of her candidacy.

19.     Plaintiff's application was then presented to the trustees of the Brentwood Board of Education. The Trustees at the times relevant to these claims were Robert Feliciano, Paula Moore, Daniel Calderon, Eileen Felix, Gail Kirkham, Helen Moss, and Elizabeth Mercado.

20.     Approximately one week after Plaintiff's second interview, she was then interviewed by the members of the Brentwood Board of Education. During the interview, Ms. Elizabeth Mercado was not present. Plaintiff submitted a supplemental packet to each board member which consisted of Plaintiff's resume, achievements, and publications. Plaintiff's interview lasted approximately thirty (30) minutes, and in sum and substance, the interview questions were with respect to her past responsibilities and accomplishments.

21.     Approximately twenty (20) minutes after her interview, Plaintiff was told by Dr. McIntrye that she was recommended for the position. Furthermore, Plaintiff was told that she would

be presented to the Brentwood Board of Education with a recommendation to be hired.

22.     On or about November 19, 2015, Plaintiff's recommendation was on the agenda and the calendar for the Board meeting.

23.     As a result of Plaintiff's position being placed on the Board's calendar and her conversations with her supervisor Kim Fauci and Dr. McIntyre, Plaintiff was under a reasonable belief that she would be awarded the position. Moreover, Plaintiff was congratulated by others in the Board meeting, as it was customary for candidates to be hired for positions once their name made it to the Board's calendar.

24.     Plaintiff's belief was further strengthened by the text of the November 19, 2015 Board Meeting Minutes which stated: "BE IT RESOLVED, that upon the recommendation of the Superintendent of Schools, the Board of Education hereby appoints Emery Francois, as the Coordinator of Health, Psychology and Social Work Services for a four (4) year probationary period effective December 7, 2015, through December 6, 2019, at a salary as set forth in the negotiated agreement between the Brentwood Union Free School District and the Brentwood Principals and Supervisors Organization."

25.     In our around December of 2015, Plaintiff was subsequently interviewed again in the presence of all the Board members so that a sufficient vote could be made. During the interview, all seven (7) Board members with present and Dr. McIntyre.

26.     The board meeting at which a vote on Plaintiff's appointment was taken and, resulted in three (3) yes, and four (4) abstaining votes. According to Roberts Rules of Ordera vote of abstention are when Board Members are present and refuse to vote. An abstaining vote has the effect of a "No" vote. Robert Feliciano, Paula Moore, Daniel Calderon, Eileen Felix decided to abstain

from participation in the vote. This in effect defeated the proposed resolution dated November 19, 2015.

27.     During the course of discussion with respect to hiring Plaintiff, Mr. Feliciano was adamant about not hiring Plaintiff. Mr. Feliciano stated, in sum and substance, that to hire Plaintiff, Dr. Francois, would be the equivalent of transforming the Brentwood School District into the "Hempstead School District." This comment was both hostile and race based. Plaintiff took offense to this comment because at the time it was made, the Hempstead School District had been ridiculed for retaining poorly qualified staff members and having poor academic performance for its largely minority student population. In essence, Feliciano was insinuating that hiring a Black woman would be a step towards ruining the school district as it was then constituted.

28.     Feliciano's comment about Plaintiff was racially discriminatory, incendiary, hostile and was used as a way to diminish Dr. Francois as a person, to diminish her experience and inhibit her ability to attain a higher position at District. Plaintiff was extremely qualified for the position and, at the time, had almost twenty (20) years of experience as a School Psychologist.

29.     Feliciano's hostility and racially targeting comments about Plaintiff did not stop there. Dr. Francois was said by Defendant Feliciano to "not [be] qualified for an appointment, that it was given to [her] not because she was qualified for the appointment, but was a gift given to [her] rather than because of [her] qualifications for the position." Despite having many years of experience and being qualified for the position of Coordinator of Health Psychology, Feliciano wrongfully and maliciously referenced that Plaintiff and Dr. McIntyre were related and that was the reason why Dr. McIntyre was seeking Plaintiff's appointment. Such racially targeting and discriminatory comments by Feliciano had no basis as Plaintiff and Dr. McIntyre, who are both Black, share no familial ties.

7

This false reasoning impacted Plaintiff and made her work environment and attempts to advance impossible.

30.     Aside from Dr. Francois, no other candidate had to endure this type of hostility and racially discriminatory treatment when applying for an Administrative position at District. Plaintiff was targeted because she was a Black interviewee. Defendant District was complicit in this harmful and hostile behavior and the discrimination as they took no action to intervene or to discipline Mr. Feliciano from engaging in such wrongful conduct.

31.     Plaintiff was advised that the Board of Trustees abstained from voting because Plaintiff was the only person presented for the position by the Superintendent and therefore amounted to non-compliance to the Brentwood Union Free School District recruitment and hiring policy. This was a pretext for the hostile discrimination against Plaintiff. Plaintiff was told that two (2) candidates were required to be presented by the Superintendent to fill any given position.

32.     At the conclusion of the Board Meeting, Plaintiff was told by each one of the Board Members, in sum and substance, either: "I'm sorry for you and you deserved the position", "I'm sorry", or "It's not about you ... [its just] that the right procedures were not followed."

33.     Plaintiff thereafter reapplied for said position in or about January of 2016. Plaintiff's interview for the position was scheduled to take place on January 8, 2016. However, she was later told by representative in Human Resources that her interview was cancelled two hours prior to the interview start time. Thereafter, the Human Resources representative told Plaintiff her interview would be rescheduled because Kimberly Fauci was not available for the interview. However, when Dr. Francois subsequently followed up with Ms. Fauci, the inverse was stated. Instead, Ms. Fauci made no reference to her unavailability but said she was informed that Dr. Francois' interview was

cancelled, which is in clear conflict from the HR representative's reasoning.

34.     Upon information and belief, due to the racially discriminatory targeting and practices by Defendant ESCORBORES, Plaintiff was denied of her opportunity to a rescheduled interview for the Coordinator of Health Psychology position at District.

35.     Plaintiff never received further communications in regards to her new interview date nor was Plaintiff allowed to reapply for the position.

36.     By contrast, Plaintiff was informed by her supervisor, Ms. Fauci, that Ms. Rosa Cortese was allowed to reapply for the position of Coordinator of Health Psychology. Unlike Plaintiff, Ms. Rosa Cortese, a woman of Italian descent was allowed to reapply for the same exact position that Plaintiff was told by Defendants that she could not reapply for. Upon information and belief, Ms. Cortese did not accept the position.

37.     Since Plaintiff's interview, there have been at least two (2) administrative positions that have been filled wherein there was only one (1) candidate presented and recommended to the Board, where said candidate was hired.

38.     As a result of the racially discriminatory actions by Defendant District, Plaintiff submitted an EEOC complaint Charge No.: 520-2016-00907 against the District in or around July of 2016.

39.     Ultimately, Plaintiff was never hired for the position of Coordinator of Health Psychology at District.

40.     Despite Plaintiff being available, being qualified and being willing to fill the position, on or about August of 2016, Sean Coffin, a Caucasian male, was hired for the position of Coordinator of Health Psychology, Social Work. This is the same exact position that Plaintiff was

9

not only told she could not reapply for but was given the pretextual reasoning that she had to reapply for but could not interview again for the position because she was the *sole applicant*.

41.     Based on these racially discriminatory actions by Defendants, Plaintiff was mocked, subjected to ridicule and wrongfully denied a promotion in her employment at District in favor a non-Black interviewee.

42.     As of this writing, Sean Coffin still holds the position of Coordinator of Health Psychology at District until this very day.

43.     In or around June of 2017, upon information and belief, the BRENTWOOD BOARD OF EDUCATION unanimously approved the appointment of Mr. Richard Loeschner as the Superintendent of Brentwood School District. Upon information and belief, Mr. Loeschner was the *sole applicant* presented for the position. Mr. Loeschner was not denied the available position, neither did any Board of Education member abstain from voting as was done during Plaintiff's vote. Unlike Dr. Francois, a Black applicant/interviewee, Mr. Loeschner was a white applicant/interviewee.

44.     On or about February 15, 2018, the BRENTWOOD BOARD OF EDUCATION unanimously approved Ms. Ann Palmer's appointment as the Assistant Superintendent for Elementary Education. Originally, Ms. Palmer was applying for the position of Assistant Superintendent for Elementary Education and Personnel, which she did not receive. The District did then alter the title of the position to Assistant Superintendent for Elementary Education. The alteration of the position's title was done to insure the employment of Ms. Palmer. Such differential and preferential treatment was not given by District to Dr. Francois. Unlike Dr. Francois, Ms. Palmer was a white applicant/interviewee.

45.     On or about February 15, 2018, the BRENTWOOD BOARD OF EDUCATION unanimously approved Ms. Wanda Ortiz-Rivera's appointment as the Assistant Superintendent for Bilingual Services. Ms. Ortiz-Rivera was the *sole applicant* presented for the position and was the only one recommended by the Superintendent. Ms. Ortiz-Rivera was not denied the available position. Moreover, no member of the Board of Education abstained from voting as was done during Plaintiff's vote. Unlike Dr. Francois, Ms. Ortiz-Rivera was a Latino/Hispanic applicant/interviewee.

46.     Prior to February 15, 2018, the position of Assistant Superintendent for Bilingual Services never existed. Dr. Francois was informed by the President of the Teacher's Association, Kevin Coyne, that the Assistant Superintendent for Bilingual Services was created to employ Ms. Ortiz-Rivera. Once again, District demonstrated differential and preferential treatment to non-Black applicants because Dr. Francois was wrongfully not allowed to reapply for interview for a position for which she was qualified, let alone have an entire position created for her.

47.     After the Board's selections were made, Dr. Francois relayed her concerns about the discriminatory behavior, with respect to her race, which she faced by the Defendant Board Members, in a conversation with her Union Representative, Mr. Kevin Coyne. In an attempt to mock Plaintiff, harshly diminish her efforts to challenge her hostile treatment and to thwart her racial grievances and concerns, Dr. Francois was told by Mr. Coyne that there were no forms available to file a grievance. This treatment not only embarrassed Plaintiff but served to cause fear in Plaintiff for raising her voice about wrongful treatment.

48.     Despite Dr. Francois being wrongfully targeted due to her race in which she was denied promotions, misguided with pretextual reasons and excluded from a position for which she was duly qualified, Plaintiff continued to perform her role as School Psychologist in an exemplary

fashion.

49.     Defendants continually engaged in hostility towards Plaintiff and a course of action that denied Plaintiff an opportunity to an employment promotion due to her race and were either intentionally not following procedures or using claimed procedures in an arbitrary pretextual manner. Plaintiff was wrongfully denied opportunity to reapply to a position she was qualified for and giving the pretextual reasons that she was the *sole applicant*. In comparison, Mr. Loeschner and Ms. Ortiz-Rivera were not only sole applicants but were all approved by the Board. Also, demonstrating differential and preferential treatment was District creating and/or altering titles of positions for Ms. Palmer and Ms. Ortiz-Rivera. The only difference between the aforementioned applicants and Dr. Francois is that Plaintiff was a Black applicant/interviewee.

50.     Each day Defendants looked in Plaintiff's face and continued their abuse by not allowing her complaints of differential treatment and refusing to acknowledge that Dr. Francois was qualified for a promotion and wrongfully misguided and denied that promotion, while non-Black candidates received positions and/or promotions as the *sole applicant* presented for such positions.

51.     After these racially discriminatory acts, which became known in 2018, the hostile treatment became apparent. As a result of the revealing of this treatment, Plaintiff's relationship with her colleagues st South Middle School was forever shattered. Due to the embarrassment and humiliation suffered by Plaintiff, the work environment was hostile and led to Plaintiff feeling unwelcome and isolating herself from social employment events, such as holiday parties and gatherings.

52.     Plaintiff felt anxious and overwhelmed going to work everyday because of the discriminatory and differential treatment visited upon her and her receiving race-based comments

wrongfully challenging her proficient work qualifications.

53.     Notwithstanding Defendants creation of a work environment which was both disrespectful and hostile and grounded in racially discriminatory actions, Plaintiff continued to perform her roles and responsibilities as School Psychologist at South Middle School and the Freshmen Center at a high level. However, the wrongful actions by Defendants did not stop there.

54.     On March 25, 2018, Defendant ESCORBORES, who was and remains the Principal of South Middle School, targeted Dr. Francois in an attempt to provoke Plaintiff and paint her as unprofessional and not following work protocols and procedures.

55.     Plaintiff's usual work locations were South Middle School and the Freshmen Center. In this particular instance, Plaintiff had to conduct a mandatory Special Service Evaluation assignment at an elementary school, which was outside of her usual locations. The procedure when a School Psychologist goes to another building is to record such visit in a Sign-Out Log Book.

56.     As required, Dr. Francois followed such protocol and procedure and made a record in the Sign-Out Log Book to indicate that she would be going to a different location.

57.     Upon information and belief, Defendant Escorbores, in his role as Principal of School Middle School, constantly checks the Sign-Out Log Books to know where staff persons are located.

58.     Rather than following the usual procedure, Escorbores failed to check the Sign-Out Log Books with regard to the Plaintiff. Defendant Escorbores went even further to heighten the hostility to intimidate and humiliate Dr. Francois he made several announcements on the Public Announcement system to the entire school asking where Plaintiff was located and by sending emails to Plaintiff's supervisors at Special Services inquiring about her whereabouts and falsely stating that she was "Missing in Action." No such action was taken against other non-Black member of the staff.

By Broadcasting the need to know Plaintiff's whereabouts over the public announcement system Defendant Escorbores engaged in a level of action intended to cause Plaintiff more and greater humiliation.

59.     Defendant Escorbores engaged in such racial discriminatory actions to target and make it seem as if Plaintiff was not performing her job at the highest level.

60.     On May 29, 2018, Plaintiff met with Defendant Escorbores to challenge the discriminatory behavior and receive an explanation for the excessiveness of his actions. Rather than giving Dr. Francois a reasonable explanation, Defendant Escorbores was dismissive and directed Plaintiff to send him an email whenever she was leaving to do an assignment in another building. Not only did Defendant Escorbores refuse to accept Plaintiff's complaint and fail to follow District procedures for complaint, in addition to that, this was not required of other non-Black persons at Plaintiff's level.

61.     During that discussion, Plaintiff requested Defendant Escorbores to communicate with Special Services to advise them of his email directive. Dr. Francois made that request because Defendant Escorbores was continuing to discriminate against Plaintiff and did not request any other non-Black employee to engage in such a protocol when they were leaving the middle school to do a work assignment.

62.     This was not the first time Defendant Escorbores had intentionally targeted Plaintiff. In 2015, Defendant Escorbores acted in a similar manner calling the Special Services frantically inquiring about where Plaintiff was located, instead of following standard procedure and checking the Sign-Out Log Books. However, after being wrongfully denied and passed over for a promotion, suffering emotional pain, having anxiety, and isolation from colleagues as a result of being

14

embarrassed and humiliated, this instance of racial discrimination was too much for Plaintiff to bear.

63.     Following the events of May 25, 2018, Dr. Francois met with her supervisors Kim Fauci and Sean Coffin to request a transfer from the South Middle School building. Up until that time, Plaintiff had worked in the South Middle School building at District for twenty-two (22) years.

64.     Dr. Francois would not have had to be forced to requested such a transfer if she was not subjected to the hostile environment and continually discriminated against because of her race.

65.     After the discriminatory actions committed by Defendant Escorbores, Dr. Francois informed her Union of his actions to initiate a formal complaint against Defendant Escorbores.

66.     On June 12, 2018, following several email exchanges between Plaintiff and her Union Representatives Kevin Coyne, Donna McStay and Steve Brennan, Plaintiff met with Donna McStay to discuss Defendant Escorbores' hostile, excessively discriminatory and intentionally targeting actions.

67.     At that meeting, Dr. Francois was informed that: (1) Defendant Escorbores should have checked the Sign-Out Log Books prior to making any announcements regarding Plaintiff's location; and (2) There was no need for Plaintiff to take the additional step of sending an email to Defendant Escorbores when she was leaving for assignment.

68.     Although Defendant Escorbores was wrong for taking the excessive and racially discriminatory actions toward Plaintiff, he was never subject to an investigation as required or disciplined by Defendant District.

69.     Upon information and belief several employees have filed complaints against Defendant Escorbores, in which he has never been disciplined for by Defendant District.

70.     Defendant Escorbores' hostile, racially discriminatory and retaliatory actions toward Plaintiff continued after her transfer from the South Middle School was granted.

71.     In or around of June of 2018, Dr. Francois had finished packing up her office in South Middle School. Contained in boxes were all of her psychological, confidential, and personal files she had amassed in her twenty-two (22) years at South Middle School. In all, there were approximately eight to ten (8-10) boxes of Dr. Francois' work records and paraphernalia.

72.     When a employee, such as Dr. Francois, is transferring from one building to another, the standard procedure at South Middle School is for that employee to pack all of their belongings, indicate what building the belongings are to be transported to, and then once the transfer was approved by the Principal, a custodian would transport the employee's belongings.

73.     Defendant Escorbores, as the Principal of South Middle School, must approve the transfer of any employee's personal belongings from South Middle School to another location.

74.     Upon information and belief, the transportation process usually occurs during the summer months (July and August) since there is less student and faculty traffic as compared to the normal school year.

75.     From the end of June of 2018 until early September of 2018, Plaintiff repeatedly asked Defendant Escorbores where were her boxes of personal items, psychological, confidential and personal work files. Defendant Escorbores' response was that he did not know where her items were located. This was a further act of race based hostility and was extremely troublesome to Plaintiff because these boxes contained over two decades of her work files as School Psychologist at District.

16

76.     In or around the middle of September of 2018, a colleague informed Dr. Francois that her eight to ten (8-10) boxes of psychological, confidential, and personal work files were on the 1st floor next to the South Middle School Auditorium. Such information was tremendously painful to Dr. Francois because her former office at South Middle School was located on the 2nd floor and despite her best efforts for over three months was forced to endure stress, pain and suffering.

77.     Furthermore, the Auditorium's location has a constant amount of student and faculty traffic and is close to exits from the South Middle School building. Plaintiff's boxes of psychological, confidential and personal work files were unprotected and essentially in the open for anyone to take.

78.     More importantly, the only person that has the power to authorize such a movement of Dr. Francois' files from her former office was Defendant Escorbores.

79.     In contradiction of Defendant Escorbores claiming that he did not know where Dr. Francois' boxes of files were for over three months, the Auditorium is the location where Staff Meetings were frequently held and is a location where Escorbores traveled throughout the school day when he made his routine checks around the school.

80.     Defendant Escorbores was once again targeting Plaintiff for no other reason than her race, and also retaliating against her because she stood up for herself and complained to her Union representatives about Escorbores' discriminatory racially motivated actions. Plaintiff did not receive her boxes of psychological, confidential and personal work files until late September of 2018. No other similarly situated non-Black employee was treated in such a manner.

81.     In addition to Defendant Escorbores claim of being "unaware" of Dr. Francois' boxes of work files, Defendant Escorbores continued his retaliation by not allowing Dr. Francois to continue the Social Justice Peer Program she developed in the South Middle School building.

82.     In September of 2018, Dr. Francois was working solely in the Freshmen Center as School Psychologist. Since Dr. Francois had been transferred to the Freshmen Center, she asked Defendant Escorbores to continue the Social Justice Peer Program in the middle school because it was a useful resource of mentorship for students.

83.     Defendant Escorbores informed Plaintiff that she had to reapply to have the program continue in the South Middle School building. Dr. Francois complied and reapplied to have the program continue in the middle school. Defendant Escorbores as an act of retribution, retaliation, and continuance of his discrimination, never acknowledged, replied, and/or intentionally ignored Plaintiff's application.

84.     Time after time, Dr. Francois was a target of Defendant Escorbores' hostile, racially motivated targeting and retaliatory actions. Despite the adverse employment actions and injury caused, Plaintiff struggled to maintain her dignity and rise above it all.

85.     Rather than be deterred by Defendant Escorbores' constant discriminatory and retaliatory actions, Dr. Francois advanced the Social Justice Program she created to the Freshmen Center as well as the Brentwood High School.

86.     Although Plaintiff has been consistently overlooked, targeted, and intimidated by Defendants due to her race, she has always maintained a professional and excellent work ethic, notwithstanding the emotional pain, embarrassment and humiliation. Dr. Francois continues to be subjected to the discriminatory and retaliatory actions at the hands of Defendants.

87.     Plaintiff has always been a good worker at District and extremely dedicated to the students who she is there to support. Plaintiff has served under multiple administrations over her two decade tenure at District. Plaintiff was flabbergasted by the mistreatment of Defendants toward her. Defendants did not treat non-Black employees in the same discriminatory and retaliatory manner as Plaintiff.

88.     Dr. Francois' hard work and dedication to her employment at District was never recognized, respected, or rewarded by Defendants. Instead, Defendants saw Dr. Francois as someone to abuse, to be passed over and disregarded because she is Black.

89.     In all, Plaintiff suffered multiple damages including, but not limited to emotional distress, loss of income, loss of support, stress, impairment of earning power, injury to professional reputation, loss of professional association, tortuous interference with prospective contracts and business relationships, violation of civil rights and other monetary damages and other injuries not yet fully ascertained, due to the Defendants malicious and discriminatory actions against her based upon her color and race.

## AS FOR A FIRST CAUSE OF ACTION
### 42 U.S.C. § 1981

90.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 89 of this with the same force and effect as though fully set forth herein.

91.     The hostile work environment, discriminatory and retaliatory conduct referenced in paragraphs 1 through 89 of this Complaint denied Plaintiff of her rights to access employment promotions and opportunities. Dr. Francois was subjected to a work environment where Plaintiff was constantly overlooked and intentionally targeted due to her race in comparison to her non-Black

colleagues. Such abusive mistreatment by Defendants is and was against Plaintiff's right to equal protection under the laws. These rights are guaranteed to the Plaintiff under 42 U.S.C. §1981.

92.     The custom, pattern and practice referenced in paragraphs 1 through 89 of this Complaint were in part based on race and color and based on Plaintiff's opposition to discriminatory, retaliatory and other unlawful conduct that occurred at the hands of Defendants. Upon information and belief, there have been several employee complaints made against Defendant Escorbores for his discriminatory actions and Defendant District has allowed his actions to continue without any corrective disciplinary responses.

93.     Because of Plaintiff's race, color, and opposition to discrimination and unlawful practices, Defendants subjected Plaintiff to mistreatment, harassment, hostile work environment, and different treatment than other similarly situated non-Black employees, as detailed in the allegations listed above.

94.     Defendants violated its own rules, policies and public policy by discriminating against Plaintiff because of her race, color, and opposition to discrimination, retaliation and other unlawful practices.

95.     Plaintiff has also performed in an above satisfactory manner throughout the duration of her employment with Defendant District. Notwithstanding her impeccable work performance, for no other reason than being Black, Plaintiff was denied promotions for reasons by District that did not apply to her non-Black colleagues. Furthermore, Defendant Escorbores, subjected Plaintiff to racially discriminatory and retaliatory treatment during her tenure as School Psychologist in South Middle School and created such a hostile work environment, she was forced to transfer to the Freshmen Center at District.

96.     Such discriminatory and retaliatory actions by Defendants include, but not limited to: (1) Denying Plaintiff the position as Coordinator of Health Psychology; (2) Denying Plaintiff an opportunity to reapply to Coordinator of Health Psychology when other non-Black employees were allowed to reapply to position such as Ms. Cortese; (3) Defendant District stating to Plaintiff that sole applicants cannot be presented to the Board, yet not only presenting non-Black *sole applicants* to the Board such Mr. Loeschner and Ms. Ortiz-Rivera, but also altering titles and/or creating new positions for Ms. Palmer and Ms. Ortiz-Rivera; (4) Defendant Escorbores constant discriminatory targeting of Plaintiff forcing her to inform her Union representatives and ultimately transfer to the Freshmen Center; (5) Following Plaintiff's transfer to the Freshmen Center because of Escorbores, he continued to retaliate against her by intentionally delaying the transportation of her confidential work files and intentionally disregarding her application to continue the Social Justice Program in South Middle School.

97.     Even after Plaintiff's filed an EEOC Complaint against Defendants due to their racially discriminatory actions, there was no change in Defendants abusive, arbitrary, and inexcusable conduct towards her. In fact, the hostility against Plaintiff increased and Plaintiff was treated this way for no reason other than because she is Black and has opposed her discriminatory treatment.

98.     As a direct and  proximate result of the aforesaid acts of the Defendants, Plaintiff suffered great harm, mental anguish and violation of rights and she has been greatly humiliated and mentally injured, as a result of the foregoing acts of the defendants.

99. Plaintiff suffered multiple damages including, but not limited to emotional distress, loss of income, loss of support, severe humiliation, anxiety, feelings of isolation from co-workers due to false rumors, stress, impairment of earning power, injury to professional reputation, loss of professional association, tortuous interference with prospective contracts and business relationships, violation of civil rights and other monetary damages and other injuries not yet fully ascertained, due to the Defendants malicious and discriminatory actions against her based upon her color and race.

100. As a direct and proximate result of the Defendants' unlawful acts, the Plaintiff has been exposed to disgrace, public humiliation and embarrassment and has been damaged in the sum of Five Million Dollars ($5,000,000.00), including the cost of this action, attorney's fees pursuant 42 U.S.C. §1988 and punitive damages.

## RELIEF

**WHEREFORE**, Plaintiff seeks the following relief:

a. First Cause of Action: in excess of five million dollars ($5,000,000.00) in compensatory damages, punitive damages and attorney's fees;

b. Plaintiff's attorneys fees, disbursements and costs;

c. A declaratory judgment stating that Defendants willfully violated Plaintiff's rights secured by federal and state laws as alleged herein;

d. Injunctive relief: an injunction requiring Defendants to correct all present and past violations of federal and state law as alleged herein; and to require Defendants to respond in good faith to Plaintiff's grievances of hostile work environment, and discriminatory and retaliatory treatment by Defendants;

e. An Order granting such other legal and equitable relief as the court deems just and proper.

**A JURY TRIAL IS DEMANDED**

Dated: Hempstead, New York
      November 10, 2021

LAW OFFICES OF
FREDERICK K. BREWINGTON
Respectfully Submitted,

By: _____
    FREDERICK K. BREWINGTON
    *Attorneys for Plaintiff*
    556 Peninsula Boulevard
    Hempstead, New York 11550
    (516) 489-6959

23