UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
EMERY FRANCOIS,                                     :
                                                    :
                                    Plaintiff,      :
                                                    :       <u>MEMORANDUM & ORDER</u>
                       -against-                    :
                                                    :       21-CV-6265 (ENV) (AYS)
BRENTWOOD UNION FREE SCHOOL         :
DISTRICT; BRENTWOOD BOARD OF        :
EDUCATION; DR. BERGRE DR.           :
ESCORBORES, in his individual and official    :
capacity,                                           :
                                                    :
                                    Defendants.   x
------------------------------------------------------------- 

VITALIANO, D.J.

On November 10, 2021, plaintiff Emery Francois filed this action under 42 U.S.C. § 1981

against defendants Brentwood Union Free School District ("District"), Brentwood Board of

Education ("BOE"), and Dr. Bergre Escorbores, bringing claims for disparate treatment,

retaliation, and hostile work environment. Compl., Dkt. 1. Before the Court is Magistrate Judge

Anne Y. Shields's Report and Recommendation ("R&R"), recommending that defendants'

motions to dismiss under Rules 12(b)(5) and (6) be granted, and that plaintiff's complaint be

dismissed in its entirety with prejudice. R&R, Dkt. 20, at 11, 14.[1] Plaintiff filed timely written

objections to Judge Shields's R&R on April 21, 2023. Pl.'s Obj., Dkt. 25. Defendants filed a

response to plaintiff's objections on May 5, 2023. Defs.' Obj. Opp'n Dkt. 26. After careful

_____

[1] All citations to pages refer to the Electronic Case Filing System ("ECF") pagination.

consideration, and for the following reasons, plaintiff's objections are substantively sustained, and the R&R issued by Judge Shields is adopted as modified by this Memorandum & Order.

Background

The Court presumes the parties' familiarity with the underlying facts and procedural history of this case, which are only recounted here insofar as they are helpful to understand the R&R and the Court's modification of it.    Plaintiff is a Black, Haitian-American woman who became a school psychologist at the District in 1993, and held that title at all relevant times. Compl. ¶¶ 9–14.    In short, she alleges that the BOE rejected her application to become the District's Coordinator of Health Psychology in December 2015 and ignored her when she reapplied in January 2016 because of her race.  *Id.* ¶¶ 15–33.  Ultimately, in August 2016, the BOE hired a white applicant for the position.  *Id.* ¶ 40.

Plaintiff challenged her rejection for the first time in July 2016, before the BOE completed its hiring, by filing a complaint with the Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 38.  At an unspecified point after the BOE announced its selection, plaintiff claims she asked her union representative how to file a grievance.  *Id.* ¶ 47.  In response, the union representative allegedly mocked her and said there were no forms to file a grievance.  *Id.*

Jumping to 2018, plaintiff was working as a school psychologist at two schools, South

Middle School and the Freshman Center. *Id.* ¶¶ 53, 55.  On March 25, 2018,[2] plaintiff left South Middle School to complete an assignment at one of the District's elementary schools, recording her departure in South Middle School's "Sign-Out Log Book." *Id.* ¶¶ 55–57.  After she had left the building, plaintiff alleges that Dr. Escorbores, South Middle School's principal, asked for her whereabouts on the school's public announcement system and emailed her supervisors inquiring where she was, saying that she was "Missing in Action," without ever checking the log book, intending to publicly embarrass her. *Id.* ¶¶ 57–59.  According to plaintiff, this was not the first time Dr. Escorbores had called her supervisors to ask where she was without checking the log book; she claims he had also done so in 2015. *Id.* ¶ 62.  Plaintiff spoke to Dr. Escorbores about the more recent incident in May 2018, and during that conversation, Dr. Escorbores asked plaintiff to send him an email whenever she left the building, something he allegedly never asked of her non-black peers. *Id.* ¶ 60.  That conversation prompted plaintiff to ask her supervisors for a transfer out of South Middle School later that spring, which was approved, and to reach out to her union representatives about filing a complaint against Dr. Escorbores. *See id.* ¶¶ 63–67, 71.

Once the school year ended, plaintiff packed her belongings, including confidential psychological files, and expected that Dr. Escorbores would arrange for them to be transferred to

---

[2] The complaint, at one point, states that these events occurred on March 25, 2018, as do plaintiff's opposition papers.  Compl. ¶ 54; Pl's Mem. Opp'n at 10 ("In March of 2018 . . . .").  However, later in the complaint, plaintiff makes reference to "the events of May 25, 2018." Compl. ¶ 63.  This appears to be a typographical error, either intending to refer to the events of March 25 or plaintiff's meeting with her supervisors on May 29, described *infra*.

her new school in either July or August. *Id.* ¶¶ 71–74. However, plaintiff contends that Dr. Escorbores concocted a plan to hide her belongings in a public, high-foot traffic area of South Middle School, just outside the school's auditorium, from June to September. *Id.* ¶¶ 75–80. Plaintiff recovered her files in September 2018 after a colleague discovered them next to the auditorium. *Id.* ¶¶ 76, 80. In one final parting blow, plaintiff avers that in September 2018, Dr. Escorbores ignored her requests to continue running a mentorship program at South Middle School. *Id.* ¶¶ 82–83.

After plaintiff filed the complaint in this action, she attempted to effectuate service on defendants on November 22, 2021.[3] But, Francois had, as defendants advised in their pre-motion conference request, delivered unsigned and unsealed summonses in making her purported service on defendants. *See* Defs.' Pre-Mot. Conference Ltr., Dkt. 7, at 3. Apparently prompted by defendants' chiding, plaintiff attempted to effectuate service on defendants a second time on January 27, 2022.[4] In her second attempt, as to all defendants, Francois delivered process to the school district's clerk, and with respect to Dr. Escorbores, she also mailed a copy of process to the school district's clerk's office.[5] Francois never personally served Dr. Escorbores, nor did she mail

---

[3] *See* First BOE Aff. Serv., Dkt. 5, at 1; First District Aff. Serv., Dkt. 5-1, at 1; First Dr. Escorbores Aff. Serv., Dkt. 5-2, at 1.

[4] *See* Second BOE Aff. Serv., Dkt. 10, at 1; Second Dr. Escorbores Aff. Serv., Dkt. 10-1, at 1; Second District Aff. Serv., Dkt. 10-2, at 1

[5] *See* Second BOE Aff. Serv., Dkt. 10, at 1; Second Dr. Escorbores Aff. Serv., Dkt. 10-1, at 1; Second District Aff. Serv., Dkt. 10-2, at 1

process to his home or his South Middle School office. *See* Pl.'s Opp'n Mot. Dismiss, Dkt. 14, at 23.

<u>Legal Standard</u>

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Dynegy Midstream Servs. v. Trammochem*, 451 F.3d 89, 94 (2d Cir. 2006) (citation omitted). Under Rule 12(b)(5) of the Federal Rules of Civil Procedure, a defendant may assert insufficiency of process by motion. A court looks to materials outside of the pleadings in determining whether service of process has been insufficient. *See Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002). The burden is on the plaintiff to establish that his service was not insufficient. *See id.* (citation omitted); *see also Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir. 2005) (citing *Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003)). If the court determines that it was insufficient, the court may, but is not required to, dismiss the action. *See Darden*, 191 F. Supp. 2d at 387 (citations omitted). Alternatively, the court may grant leave to allow the plaintiff to cure the insufficiency. *See, e.g.*, *id.* at 388, 399–400.

To overcome a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007)). A claim is

plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This "plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 570). The district court must accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the nonmoving party. *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008).

Even though potentially case-dispositive, motions to dismiss may be referred to a magistrate judge for report and recommendation. Upon receiving the R&R from the magistrate judge, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). In the absence of any objection, the district court need only be satisfied that there is no clear error on the face of the record. *Dafeng Hengwei Textile Co. v. Aceco Indus. & Commercial Corp.*, 54 F. Supp. 3d 279, 283 (E.D.N.Y. 2014). Clear error exists "where, upon a review of the entire record, [the district judge] is left with the definite and firm conviction that a mistake has been committed." *Saveria JFK, Inc. v. Flughafen Wien, AG*, No. 15-CV-6195, 2017 WL 1194656, at *2 (E.D.N.Y. Mar. 30, 2017).

However, a district judge must "determine *de novo* any part of the magistrate judge's

disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C.

§ 636(b)(1).  Importantly, "objections must be specific and clearly aimed at particular findings in

the magistrate judge's proposal."  *N.Y.C. Dist. Council of Carpenters v. Allied Design & Constr.,*

*LLC*, 335 F. Supp. 3d 349, 351 (E.D.N.Y. 2018); *Barratt v. Joie*, No. 96-CV-0324, 2002 WL

335014, at *1 (S.D.N.Y. Mar. 4, 2002).  "General or conclusory objections, or objections which

merely recite the same arguments presented to the magistrate judge, are reviewed for clear error."

*N.Y.C. Dist. Council of Carpenters*, 335 F. Supp. 3d at 351 (citation omitted).  Conversely, but to

the same effect, in this district and circuit, district courts generally do "not consider new arguments

raised in objections to a magistrate judge's report and recommendation that could have been raised

before the magistrate [judge] but were not."  *Id.* (citation omitted).

<u>Discussion</u>

In the first of two objections to the R&R, Francois argues that Judge Shields erred by

holding that service had not properly been effectuated on Dr. Escorbores under C.P.L.R. § 308(2).

Pl.'s Obj. at 6–13; R&R at 9–11.  In her second objection, Francois contends that Judge Shields

erroneously dismissed her remaining claims as time barred because Judge Shields did not account

for the fact that New York state tolled the relevant statute of limitations for 228 days during the

COVID-19 pandemic.  Pl.'s Obj. at 1–6.  The jurisdictional objection interposed by plaintiff will

be, as is necessary, considered first.  *See Hertzner v. U.S. Postal Serv.*, No. 05-CV-2371 (DRH)

(ARL), 2007 WL 869585, at *3 (E.D.N.Y. Mar. 20, 2007) ("Where a defendant moves for

dismissal under Rules 12(b)([5]) [] and (6), 'the Court must first address the preliminary questions of service and personal jurisdiction.'" (quoting *Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003))).

## I.    Service of Process

The R&R faults plaintiff's putative service on Dr. Escorbores on multiple grounds: because (1) Dr. Escorbores did not authorize the District's clerk to accept service on his behalf; and (2) South Middle School, not the District's clerk's office, was Dr. Escorbores's actual place of business.[6]   *See* R&R at 9–11.   Francois assigns error to this finding and recommendation, protesting that she more than adequately effectuated service on Principal Escorbores by (1) delivering process to the school district's clerk; and (2) mailing process to the school district's clerk's office.   *See* Pl.'s Opp'n Mot. Dismiss at 23; Pl.'s Obj. at 9–10; Second Dr. Escorbores Aff. Serv., Dkt. 10-1, at 1.

The black letter rules controlling the service of process are straightforward and not in dispute.   Under Federal Rule of Civil Procedure 4(e), "[s]ervice is proper if it complies with the methods outlined under . . . the law of the state where the district court is located or where service

---

[6] The school district's clerk's office is located at 52 Third Avenue, Brentwood, New York 11717, *Office of the District Clerk*, Brentwood Union Free Sch. Dist., https://www.bufsd.org/about/district-clerk; Aff. Service at 3, whereas South Middle School's address is 785 Candlewood Road, Brentwood, New York 11717, *South Middle School*, Brentwood Union Free Sch. Dist., https://southmiddle.bufsd.org/.   The Court takes notice of the fact that these are separate buildings.   *See McArthur v. Yale New Haven Hosp.*, No. 20-CV-998 (SRU), 2021 WL 3725996, at *6 (D. Conn. Aug. 23, 2021).

is made." *Castiglione v. Papa*, 423 F. App'x 10, 12 (2d Cir. 2011) (citing Fed. R. Civ. P. 4(e)). As relevant here, § 308(2) requires that a plaintiff "deliver[] the summons within the state to a person of suitable age and discretion at the actual place of business . . . of the person to be served and by . . . mailing the summons by first class mail to the person to be served at his or her actual place of business . . . ."

When assessing the efficacy of process served under § 308(2), courts have repeatedly recognized that "[a]uthorization . . . is not required. All that is required is that the person to whom service is made be of 'suitable age and discretion.'" *See, e.g.*, *Leung v. New York Univ.*, No. 08-CV-5150 (GBD), 2016 WL 1084141, at *8 (S.D.N.Y. Mar. 17, 2016) (quoting *City of New York v. VJHC Dev. Corp.*, 125 App. Div. 3d 425, 425, 2 N.Y.S.3d 453 (1st Dep't 2015)); *D.S. ex rel. C.S. v. Rochester City Sch. Dist.*, No. 19-CV-6528 (EAW), 2020 WL 7028523, at *7 (W.D.N.Y. Nov. 30, 2020) ("[T]he Court rejects the District Defendants' first contention that the service was invalid because the individuals receiving the papers were not expressly authorized to accept service. As noted, this is not required by CPLR 308(2)."). The R&R, on the other hand, synthesizes an authorization requirement from *Valle v. GDT Enterprises, Inc.*, No. 19-CV-797 (SJF) (AKT), 2020 WL 435295, at *3–4 (E.D.N.Y. Jan. 28, 2020). However, the *Valle* court addressed whether a corporation was properly served, triggering C.P.L.R. § 311, which has an authorization requirement but does not apply to Dr. Escorbores, a natural person. *See id.* Moreover, and significantly, given the record upon which this motion has been submitted for

decision, it is abundantly clear that Dr. Escorbores has not put forward any evidence that the District clerk was too young to accept service or lacked "discretion." Accordingly, plaintiff has adequately shown that she served process on a person of suitable age and discretion.

Turning to § 308(2)'s requirement that the plaintiff deliver and mail process to the defendant's actual place of business, the R&R concludes that plaintiff did not do so because Dr. Escorbores's actual place of business is South Middle School, not the school district's clerk's office. R&R at 10. Significantly, however, "the phrase 'actual place of business' is not necessarily synonymous with being 'physically present with regularity.'" *Leung*, 2016 WL 1084141, at *6. "No definitive test has emerged as to the meaning of actual place of business," instead, "the key requirement is a reasonable reliance on prompt redelivery of the summons to the defendant." *D.S.*, 2020 WL 7028523, at *7 (cleaned up). A location can be a defendant's actual place of business even if the defendant is not "physically present with regularity" because when there is a "formal 'business relationship' between the defendant and the person to whom service was delivered," there is a presumption that the recipient will redeliver process to the defendant. *See Leung*, 2016 WL 1084141, at *6 (cleaned up). Particularly relevant here is the *Leung* court's observation that plaintiffs comply with § 308(2) by serving process on "an employee in an administration department, even if that department was located in a different building than the one in which the plaintiff worked and was physically present with regularity." *Leung*, 2016 WL 1084141, at *7.

Applying that point of law, the *Leung* court held that a plaintiff validly served defendant

doctors by delivering and mailing process to the general counsel's office of the hospital system that employed them, even though they did not work in the building to which plaintiff mailed process. *See id.*, at *8; *D.S.*, 2020 WL 7028523, at *7 (delivering and mailing process to a school district employee satisfied C.P.L.R. § 308(2) because it can fairly be "presumed that the business relationship between a school and its employees will induce the prompt redelivery of the summons to the defendant[]" teachers). Here, like the *Leung* and *D.S.* plaintiffs, plaintiff served the administrative staff of a defendant's employer; accordingly, she delivered and mailed process to Dr. Escorbores's actual place of business.

Lastly, Dr. Escorbores's lament that he never formally received process in the mail at South Middle School or at his home is of no moment. *See* Defs.' Mot. Dismiss, Dkt. 13, at 28; Defs. Obj. Opp'n at 6–7; Dr. Escorbores Aff., Dkt. 12-3, ¶ 4. There is no allegation that the school district's clerk did not receive process in the mail or that she did not ultimately forward process to Dr. Escorbores. Thus, he has made no showing of prejudice or delay in receipt, and plaintiff fulfilled her obligations under § 308(2) by mailing process to the school district's clerk's office, one of Dr. Escorbores's actual places of business. *See Leung*, 2016 WL 1084141, at *9. Therefore, plaintiff served Dr. Escorbores in accordance with controlling New York law. Her objection on this point is sustained, and the R&R is adopted as modified by this Memorandum & Order.

**II.    Timeliness of Suit**

Turning to plaintiff's second objection, Judge Shields, construing plaintiff's § 1981 claims

as § 1983 claims,[7] concluded that plaintiff's claims are time barred.  *See* R&R at 13–14.  New York's three-year statute of limitations is controlling in § 1983 claims arising here, including tolling rules authorized by state law.  *Kane v. Mount Pleasant Cent. Sch. Dist.*, 80 F.4th 101, 108–09 (2d Cir. 2023).  Because plaintiff initiated this action on November 10, 2021, Judge Shields concluded that the alleged discriminatory acts plaintiff includes in her complaint, the last of which occurred in mid-September 2018, are time barred.  *See* R&R at 14.

In her objections, Francois contends that the statute of limitations was tolled for 228 days, between March 20, 2020, and November 3, 2020, by Executive Order 202.8 and subsequent executive orders signed by then-Governor Andrew M. Cuomo.  *See* Pl.'s Obj. at 3–6; 9 N.Y.C.R.R. § 8.202.8 (Mar. 20, 2020); 9 N.Y.C.R.R. § 8.202.72 (Nov. 3, 2020) (listing intervening orders). According to plaintiff, this period of tolling renders all of her claims timely.  *See id.*  This argument is at the heart of plaintiff's second objection, yet it was an argument not presented to Judge Shields while defendant's motion was referred to her for an R&R.  It is on this objection that she raises the argument in this forum.  Normally, an objector who fails to present her argument to the Magistrate Judge upon the original submission of the motion has waived the right to raise it in her objections.

---

[7] As Judge Shields articulated, *see* R&R at 12–13, plaintiff's § 1981 claims fail because that provision does not provide a private right of action against defendants, all of whom are state actors, *see Duplan v. City of New York*, 888 F.3d 612, 621 (2d Cir. 2018).  However, rather than dismissing plaintiff's complaint on that basis alone, Judge Shields properly "construed [] plaintiff's claims . . . , incorrectly brought under [§] 1981 alone, as § 1983 claims."  *See Quinones v. City of Binghamton*, 997 F.3d 461, 468 n.4 (2d Cir. 2021) (internal quotation marks omitted) (quoting *Duplan*, 888 F.3d at 616).

*See, e.g.*, *Kennedy v. Adamo*, No. 02-CV-1776 (ENV) (RML), 2006 WL 3704784, at *3 (E.D.N.Y. Sept. 1, 2006), *aff'd*, 323 F. App'x 34 (2d Cir. 2009).

However, even in the best of times, the "normal rule" is not universally applied. *See, e.g.*, *Contreras v. Wal-Mart Stores E., LP*, No. 18-CV-3589 (SJF) (ST), 2020 WL 1429473, at *7 (E.D.N.Y. Mar. 24, 2020); *Stock Mkt. Recovery Consultants Inc. v. Watkins*, No. 13-CV-193 (PKC) (VVP), 2015 WL 5771997, at *4 (E.D.N.Y. Sept. 30, 2015); *Dimaggio v. Colvin*, No. 13-CV-296 (CCR), 2015 WL 4392954, at *2–3 (D. Vt. July 15, 2015). These were hardly the best of times. The COVID-19 pandemic ranks with history's worst of times. At the time the underlying motion was submitted for decision, the civil justice playing field in New York was quite muddled after the issuance of the Governor's executive orders, which regardless of the means of their operation, were intended to pause the system and hold litigants harmless from the virus. At the time the defense motion to dismiss was submitted for decision in 2022, district courts interpreting the meaning of the series of executive orders issued by then-Governor Cuomo were "split on whether Executive Order 202.8 suspended or tolled time periods to which it applied." *Loeb v. Cnty. of Suffolk*, No. 22-CV-6410 (HG), 2023 WL 4163117, at *2 (E.D.N.Y. June 23, 2023) (collecting cases from 2022). This distinction is significant, and not merely a piece of nomenclature, because under New York law, a "toll suspends the running of the applicable period of limitation for a finite time period, and the period of the toll is excluded from the calculation of the relevant time period." *Brash v. Richards*, 195 App. Div. 3d 582, 582, 149 N.Y.S.3d 560, 561

(2d Dep't 2021) (cleaned up).  By contrast, a "suspension does not exclude its effective duration from the calculation of the relevant time period.  Rather, it simply delays expiration of the time period until the end date of the suspension."  *Id.*  And, if a toll, it was uncertain whether courts were required to consider the toll when computing the relevant limitations period or whether plaintiffs were required to raise the tolling argument.  *Compare Brash*, 195 App. Div. 3d at 585 (holding that "the tolling of a time limitation contained in a statute constitutes a modification of the requirements of such statute"), *Garnes v. Hartford Ins. Co.*, No. 22-CV-3406 (RPK) (TAM), 2023 WL 7000982, at *7 (E.D.N.Y. Aug. 9, 2023) (Merkl, M.J.) (raising the executive orders' tolling *sua sponte*), and *Harriram v. Fera*, No. 21-CV-3696 (RA), 2024 WL 1020266, at *9 (S.D.N.Y. Mar. 8, 2024) (same), *with Krichmar v. Scher*, 82 App. Div. 3d 1164, 1165, 919 N.Y.S.2d 378, 379 (2d Dep't 2011) (holding that the plaintiff must "establish that the statute of limitations has been tolled or that . . . she actually commenced the action within the applicable limitations period").

At any rate, the executive orders clearly altered the relevant limitations period as a matter of law and did not require a showing of equitable entitlement.  Since the underlying motion challenges the timeliness of Francois's claim, it was relevant to the resolution of the motion that the import of the executive orders be determined and applied to the extent necessary.  The R&R, however, either did not consider the executive orders or, if it did, concluded that they had no effect on the resolution of the motions.  While it would have been beneficial if plaintiff had taken a stab

at the import of the executive orders in her original opposition to the motion to dismiss, given that

the R&R is also silent on a modification of New York limitations law critical to the defense motion,

that the issue is one of law and not equity (making it resolvable on the existing record), and the

muddled state of the law on that point at that time, which all justify this narrow exception to the

general rule that district courts should not consider questions raised for the first time in objections

to a R&R. *See Dimaggio*, 2015 WL 4392954, at *2–3; *cf. Wilmington Tr. Nat'l Ass'n v. Fife*, 212

App. Div. 3d 550, 551, 183 N.Y.S.3d 354, 355 (1st Dep't 2023) (considering, for the first time on

appeal, the timeliness of plaintiff's motion and the executive orders' tolling because the arguments

"present[ed] a question of law that [could] be resolved on the face of the existing record").

Accordingly, the Court will consider plaintiff's tolling argument.

As the justice systems try to catch up with the havoc wrought by COVID-19, there is now

some clarity as to how New York courts view the meaning and import of the pandemic-era

executive order issued by Governor Cuomo. First, plaintiff is correct that the executive orders

tolled, rather than suspended, the statute of limitations for 228 days between March 20, 2020, and

November 3, 2020.  The four departments of the Appellate Division have uniformly held that the

executive orders tolled the statute of limitations, *Trento 67, LLC v. OneWest Bank, N.A.*, No. 2022–

04453, 2024 WL 2947520, at *9 (2d Dep't June 12, 2024) (collecting cases), and in passing, the

Court of Appeals noted that the executive orders "*tolled* all limitations periods due to the COVID-

19 pandemic," *Jaime v. City of New York*, 41 N.Y.3d 531, 537 n.2, 237 N.E.3d 796, 801 n.2 (2024)

(emphasis added).

The universal acceptance by the appellate divisions that the executive orders operated as a toll of the statute of limitations rather than suspension creates, in essence, a rule of decision that meets comfortably with the requirement that federal courts applying state law follow the decisional law adopted by the state's intermediate appellate courts in the absence of a decision by the state's highest court. *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 199–200 (2d Cir. 2005) (quoting *Pentech Int'l, Inc. v. Wall St. Clearing Co.*, 983 F.2d 441, 445 (2d Cir.1993)).  As these holdings of the appellate divisions emerged as a rule of decision, courts in this circuit joined the chorus and have found that this series of executive orders had effectuated a toll, not a suspension.  *See, e.g.*, *Aparicio v. Uber Techs., Inc.*, No. 22-CV-4244 (OEM) (SJB), 2023 WL 5287065, at *10 n.10 (E.D.N.Y. Aug. 16, 2023); *Powell v. Scollard*, No. 21-CV-1477 (VSB), 2023 WL 5975249, at *4 (S.D.N.Y. Sept. 14, 2023); *Powell v. United States*, No. 19-CV-11351 (AKH), 2022 WL 1645545, at *2 (S.D.N.Y. May 24, 2022); *Bell v. Saunders*, No. 20-CV-256 (BKS) (TWD), 2022 WL 2064872, at *5 (N.D.N.Y. June 8, 2022).

Carrying the theme forward, finding that the executive orders had modified application of New York's basic tort statutes of limitations, courts in the Second Circuit have applied the executive orders' tolling to § 1983 claims.  *See, e.g.*, *Rich v. New York*, No. 21-CV-3835 (AT), 2022 WL 992885, at *8 (S.D.N.Y. Mar. 31, 2022); *Bonilla v. City of New York*, No. 20-CV-1704 (RJD) (LB), 2020 WL 6637214, at *2 (E.D.N.Y. Nov. 12, 2020); *Briglin, v. Hurley*, No. 23-CV-

1001 (BKS) (TWD), 2024 WL 3828234, at *9 (N.D.N.Y. Aug. 15, 2024); *Wik v. Vill. of Holley*,

No. 22-CV-6414 (DGL), 2023 WL 6958794, at *4 (W.D.N.Y. Oct. 20, 2023).  Thus, as previewed

earlier, regardless of whether the R&R should have considered the impact of the executive orders

application of the statute of limitations without express argument by plaintiff or whether, given

the extraordinary circumstances of the time, it is reviewed as an exception to the ordinary rule that

arguments not presented to the magistrate judge for consideration not be heard in objection to the

R&R, the executive orders will be considered in assessing Francois's objection to the R&R's

finding and recommendation that her claims were not timely filed.  Critical to such timeliness

assessments, of course, is the determination of when a cause of action accrued.  The executive

order toll has no application in making that foundational determination.

### III.    Individual Disparate Treatment

To determine whether plaintiff's claim of individual disparate treatment is timely, the Court

must first determine when it accrued.  "Although state law determines the statute of limitations,

federal law governs the accrual of claims, and claims brought under []§ 1983 . . . typically accrue

'when the plaintiff knows or has reason to know of the injury which is the basis of his action.'"

*Barnes v. City of New York*, 68 F.4th 123, 127 (2d Cir. 2023) (*Pearl v. City of Long Beach*, 296

F.3d 76, 80–81 (2d Cir. 2002)).  Failure to promote or hire claims accrue when the plaintiff learns

of her rejection.  *Phillips v. City of New York*, 304 F. Supp. 3d 305, 311 (E.D.N.Y. 2018) (quoting

*Economu v. Borg–Warner Corp.*, 829 F.2d 311, 315 (2d Cir. 1987)); *Wall v. Yonkers Bd. of Educ.*,

No. 00-CV-4881 (DLC), 2001 WL 1512584, at *2 (S.D.N.Y. Nov. 29, 2001).

Here, plaintiff learned that the BOE rejected her first application in December 2015, canceled her interview after she applied for a second time in January 2016, and hired a white applicant in August 2016. Compl. ¶¶ 25–33, 40. Therefore, this claim accrued, at the latest, in August 2016, and the statute of limitations expired in August 2019. Though plaintiff invokes the continuing violation doctrine and the executive orders to save this claim, her argument is unavailing. The continuing violation doctrine does not apply to discrete acts, like a failure to promote, *see Harris v. Bd. of Educ. of the City Sch. Dist. of the City of New York*, 230 F. Supp. 3d 88, 98 (E.D.N.Y. 2017), and because the statute of limitations ran before the executive orders' tolling period, they do not help her. Judge Shields correctly concluded that plaintiff's individual disparate treatment claim is time barred, and it is dismissed.

## IV.    Retaliation

Francois's retaliation claim accrued when she learned of or should have learned of defendants' alleged retaliatory acts. *Colvin v. State Univ. Coll. at Farmingdale*, No. 13-CV-3595 (SJF) (ARL), 2014 WL 2863224, at *17 (E.D.N.Y. June 19, 2014). In the complaint, plaintiff claims that defendants retaliated against her for (1) filing an EEOC complaint in July 2016; (2) making "internal complaints" to Dr. Escorbores in 2018; and (3) reaching out to her union representatives in June 2018 in order to lodge a complaint against Dr. Escorbores for his actions that spring. Compl. ¶¶ 38, 65–67; Pl.'s Opp'n Mem. at 21–22. Specifically, plaintiff claims that

Dr. Escorbores retaliated against her by hiding 20 years' worth of confidential psychological files from June 2018 to early September 2018 and ignoring her request in September 2018 to continue running South Middle School's Social Justice Peer Program. Compl. ¶¶ 71–84; Pl.'s Opp'n Mem. at 21. Accruing, at the earliest, in June 2018, and accounting for the executive orders' tolling, plaintiff timely filed this claim on November 10, 2021, before the statute of limitations expired in January 2022.[8]

Focusing on the factual allegations in her complaint, plaintiff has adequately pled a retaliation claim. Although it may not survive a more demanding McDonnell Douglas challenge at summary judgment, it does meet the minimal demands of a Rule 12(b)(6) challenge. "[F]or a retaliation claim under § 1983 to survive . . . a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants acted under the color of state law, (2) defendants took adverse employment action against h[er], (3) because [s]he complained of or otherwise opposed discrimination." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 91 (2d Cir. 2015); *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018).

In addition to arguing that this retaliation claim was untimely, which the R&R sustained, defendants contended that Francois's retaliation claims because she has failed to plead a causal

---

[8] Since the continuing violation doctrine is "inapplicable to . . . retaliation claims," *see Harris*, 230 F. Supp. 3d at 98, any retaliatory conduct before March 27, 2018, including any alleged retaliation for a 2016 EEOC complaint on March 25, 2018, is not actionable. Francois's objection to the R&R's conclusion finding retaliation claims time barred is amended and the R&R as modified on this point is adopted as the opinion of the court.

nexus between her EEOC complaint, filed in 2016, and Dr. Escorbores's alleged retaliatory acts, which occurred in 2018.  Defs.' Mem. at 26–27.

Defendants' argument that this retaliation claim lacks substantive merit does carry the day. In order to succeed on such a claim, a "plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action."  *Vega*, 801 F.3d at 90 (quoting *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360, 133 S. Ct. 2517, 2533, 186 L. Ed. 2d 503 (2013)). "Causation may be shown by direct evidence of retaliatory animus or inferred through temporal proximity to the protected activity."  *Duplan*, 888 F.3d at 625.  Yet, "[t]emporal proximity alone is generally insufficient after about three months."  *Berrie v. Bd. of Educ. of Port Chester-Rye Union Free Sch. Dist.*, 750 F. App'x 41, 49 (2d Cir. 2018) (citing *Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 85 (2d Cir. 1990)).  Here, because plaintiff has failed to plead any other facts which suggest Dr. Escorbores moved her files or denied her request to continue running the Social Justice Peer Program because of her EEOC complaint, the nearly two-year attenuation between the complaint and Dr. Escorbores alleged acts dooms this theory.  Concretely, if this had been the only act upon which Francois had pursued her retaliation claim against Dr. Escorbores, her objection to the R&R on this point would have been effectively overruled since the Court would have arrived at the same conclusion—dismissal—only for a different reason.

Importantly, however, other theories are advanced to support the claim and they must be separately evaluated since the Court has now found that they are timely.  Defendants argue that,

even if these claims are timely, they are meritless.  For example, to the extent plaintiff's claim is premised on Dr. Escorbores retaliating against plaintiff for making complaints about racial discrimination to her union representatives, defendants contend that it fails because plaintiff did not allege that Dr. Escorbores knew about those complaints.  Defs.' Mem. at 25–26; Defs.' Reply at 11.  A simple demurrer is all that is required to dispatch that argument.  As this Court has recognized, plaintiffs do "not need to plead that specific agents or decision-makers had the requisite knowledge." *Supino v. SUNY Downstate Med. Ctr.*, No. 19-CV-1315 (ENV) (VMS), 2021 WL 4205181, at *9 (E.D.N.Y. Mar. 15, 2021) (quoting *Milne v. Navigant Consulting*, No. 08-CV-8964 (NRB), 2010 WL 4456853, at *5 (S.D.N.Y. Oct. 27, 2010)).  And in any event, this contention ignores plaintiff's allegation that she met with Dr. Escorbores in May 2018 to "challenge [his] discriminatory behavior."  Compl. ¶ 60.  Clearly, assuming, as the Court must, that this allegation is true, Escorbores was, at the very least, aware of the complaints plaintiff made directly to him.

Finally, defendants argue that Dr. Escorbores's purported failure to move plaintiff's files and rejection of plaintiff's request to continue running the Social Justice Peer Program are not adverse employment actions, but "petty slights or annoyance[s]."  Defs.' Mem. at 25–26; Defs.' Reply at 11.  This argument, like the last, fails.  Adverse employment actions are "not limited to discriminatory actions that affect the terms and conditions of employment," like in the individual disparate treatment context; instead, "any action that could well dissuade a reasonable worker from

making or supporting a charge of discrimination'" supports a retaliation claim. *Vega*, 801 F.3d at 90 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57, 64, 126 S. Ct. 2405, 2409, 2412–13, 165 L. Ed. 2d 345 (2006)).  "[T]here are no bright-line rules with respect to what constitutes an adverse employment action for purposes of a retaliation claim, and therefore courts must pore over each case to determine whether the challenged employment action reaches the level of adverse." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010) (cleaned up).  In other words, "[c]ontext matters." *Vega*, 801 F.3d at 90 (quoting *White*, 548 U.S. at 69).

Here, if all plaintiff alleged was that Dr. Escorbores refused to have her personal belongings moved from South Middle School to her new office, she would have pleaded only a "nonactionable petty slight." *See id.* (quoting *White*, 548 U.S. at 69); *Avillan v. Donahoe*, 483 F. App'x 637, 638 (2d Cir. 2012) (removing plaintiff's personal belongings from a locker was not materially adverse).  Likewise, if all plaintiff alleged was that Dr. Escorbores denied her the opportunity to continue running the Social Justice Peer Program, her claim would likely fail.  *See Chamberlin v. Principi*, 247 F. App'x 251, 255 (2d Cir. 2007) ("[W]e do not believe that [plaintiff's] exclusion from volunteering to take on an unassigned duty would have dissuaded a reasonable worker from bringing a discrimination charge.").

But defendants attack a strawman.  Plaintiff avers that Dr. Escorbores intentionally hid, for months, twenty years' worth of confidential psychological files near South Middle School's

auditorium—an area of the school that experiences significant foot traffic—"in the open for anyone to take." Compl. ¶¶ 76–77. And in addition, she alleges that Dr. Escorbores functionally denied her the opportunity to continue running the Social Justice Peer Program. Together, these acts are adverse actions that plausibly could have dissuaded reasonable employees from reporting discriminatory conduct. *See Collazo v. Cnty. of Suffolk*, 163 F. Supp. 3d 27, 53 (E.D.N.Y. 2016) (finding that plaintiff "raised triable issues of fact as to whether the withholding of documents, stripping of responsibilities, hostility, assignment to an isolated cubicle, failure to receive a multiline telephone, and malfunctioning security badge constitute adverse actions"); *Young v. Town of Islip*, No. 13-CV-4713 (ADS) (ARL), 2017 WL 5468752, at *5 (E.D.N.Y. Nov. 13, 2017) (granting plaintiff's motion for a new trial on her retaliation claim where she was "given written reprimands; was sent home without pay on one occasion; had a reduction in responsibilities; did not receive information vital to her job performance; and lost her health insurance earlier than she should have"); *Nezaj v. PS450 Bar & Rest.*, 719 F. Supp. 3d 318, 335 (S.D.N.Y. 2024) ("Taking away an employee's responsibilities can constitute an adverse retaliatory action."); *cf. Hanks v. City of Syracuse*, No. 22-2819, 2023 WL 8889764, at *3 (2d Cir. Dec. 26, 2023) (summary order) (no adverse employment action where plaintiff received a letter from his employer that "imposed no tangible consequences"). Thus, this claim is plausible, at least with respect to Dr. Escorbores.[9]

---

[9] Defendants do not argue that plaintiff's complaints to her union representatives were not protected activities, nor do they contend that plaintiff failed to adequately allege a causal nexus

Since the retaliation claim against Dr. Escorbores satisfies the *Iqbal* standard and, contrary to the recommendation in the R&R, is not barred by the applicable New York statute of limitations, the objection of plaintiff to the R&R is sustained to that extent, the R&R is modified by this order, and as modified, the R&R on the claims against Dr. Escorbores is adopted as the opinion of the court.

Yet Plaintiff's victory is not a victory across the board. The District and BOE correctly point out that plaintiff has failed to plausibly allege that they can be held liable for Dr. Escorbores's alleged retaliatory acts. Defs.' Mem. at 30–31; Defs.' Reply at 13. Under both §§ 1981 and 1983, a school district and board of education can be held liable if the plaintiff shows that her injury "was caused by a custom or policy within the meaning of *Monell* [*v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)] and subsequent cases." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 736, 109 S. Ct. 2702, 2723, 105 L. Ed. 2d 598 (1989); *Dodson v. Bd. of Educ. of the Valley Stream Union Free Sch. Dist.*, 44 F. Supp. 3d 240, 246–48 (E.D.N.Y. 2014). A policy can be written or "an unwritten practice that is so widespread as to have the force of law." *Agosto v. New York City Dep't of Educ.*, 982 F.3d 86, 98 (2d Cir. 2020) (cleaned up). In addition, "[t]he Supreme Court has said that a municipality may be liable for the acts of a single

---

between those complaints and Dr. Escorbores's alleged retaliatory acts in 2018. *See* Defs.' Mem at 25–26; Defs.' Reply at 11. Failing to challenge those elements, defendants effectively concede them for the purposes of this motion. *See Vora v. New York City Dep't of Educ.*, No. 22-CV-10891 (PGG) (SDA), 2024 WL 1421131, at *7 (S.D.N.Y. Jan. 24, 2024), *report and recommendation adopted*, 2024 WL 1116312 (S.D.N.Y. Mar. 14, 2024).

official—but only if that official is someone 'whose edicts or acts may fairly be said to represent official policy' for the entire municipality." *Id.* (quoting *Monell*, 436 U.S. at 694). In other words, the official must be so "high up in the municipal hierarchy" that state law empowers him to "make final policy" in "that area." *Id.* To be sure, there are "several cases within this [c]ircuit that have found principals to be final decision makers for purposes of *Monell* liability under certain circumstances[.]" *Vasquez v. New York City Dep't of Educ.*, No. 11-CV-3674 (AJN), 2015 WL 3619432, at *11 (S.D.N.Y. June 10, 2015), *aff'd*, 667 F. App'x 326 (2d Cir. 2016) (collecting cases). Here, there is no need to strain to determine whether Dr. Escorbores qualifies as a policymaker since, rather than citing any of these cases or arguing that Dr. Escorbores was a policymaker for either the District or the BOE, plaintiff simply concedes that she is not asserting a *Monell* claim. Pl.'s Mem. Opp'n at 24. Therefore, as compared to the claim against Dr. Escorbores, the opposite result is reached in the *Monell* retaliation claims against the district and Board of Education. These claims are not barred by the statute of limitations but failed to meet the *Iqbal* standard. Indeed, they are arguably withdrawn. Though plaintiff's objection to the R&R on this ground is sustained, the R&R's recommendation that they be dismissed is, as modified, adopted as the opinion of the court.

## V.    Hostile Work Environment

Francois's hostile work environment claim presents the most intricate of the many issues called up by her objection to the R&R. Here, too, Francois objects to the finding of untimeliness,

and the underlying claim itself is timely, at least in part. Unlike individual disparate treatment and retaliation claims, hostile work environment claims, by their nature, "involve[] repeated conduct" and "therefore cannot be said to occur on any particular day." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115, 122 S. Ct. 2061, 2073, 153 L. Ed. 2d 106 (2002). Consequently, hostile work environment claims accrue "when the defendant has engaged in enough activity to make out an actionable claim" and are timely so long as the plaintiff "alleges some non-time-barred acts contributing to the alleged violation." *See Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (cleaned up); *Brown v. Wetz*, No. 18-CV-11178 (NSR), 2021 WL 964922, at *9 (S.D.N.Y. Mar. 15, 2021). Moreover, "to be part of the same actionable hostile-work-environment practice, the timely offensive incident must be 'sufficiently related' to incidents outside of the limitations period." *Alvarado v. Mount Pleasant Cottage Sch. Dist.*, 404 F. Supp. 3d 763, 779 (S.D.N.Y. 2019) (quoting *Taylor v. City of New York*, 207 F. Supp. 3d 293, 309 (S.D.N.Y. 2016)).

Here, while the complaint does not clearly enunciate the factual basis of Francois's hostile work environment claim, it appears to rest on Dr. Escorbores (1) asking about plaintiff's whereabouts in 2015, Compl. ¶ 62; (2) mysteriously denying her the opportunity to interview for the Coordinator position in 2016, *id.* ¶ 34; (3) asking for plaintiff's whereabouts over South Middle School's public address system and emailing her supervisors that she was "Missing in Action" in March 2018, *id.* ¶¶ 54–59; (4) directing plaintiff to send him an email whenever she left South Middle School in May 2018, *id.* ¶ 60; (5) hiding her confidential psychological files from June to

September 2018, *id.* ¶¶ 70–80, and (6) functionally denying her request to continue running the Social Justice Peer Program in September 2018, *id.* ¶¶ 81–83. Plaintiff calculates that, for acts occurring in September 2018, the applicable statute of limitations with tolling would expire in May 2022. Whether the correct date is April or May is immaterial: Both are well after Francois's November 10, 2021, filing date. Assuming, in plaintiff's favor, that act contributed to the alleged violation and sufficiently related to the others, her objection to the finding that all acts underlying this claim are time-barred is sustained.

Nevertheless, that battle victory does not end the war. As before, defendants attacked the merits of the hostile work environment claim in addition to its timeliness. Considering these incidents in toto, plaintiff has failed to allege a plausible hostile work environment claim. "To state a hostile work environment claim, a plaintiff must plead conduct that (1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's protected status." *Rodriguez v. Town of Ramapo*, 412 F. Supp. 3d 412, 444 (S.D.N.Y. 2019) (cleaned up). Because the defendant's conduct must be severe *or* pervasive, a plaintiff must either allege "that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." *Gonzalez v. City of New York*, 377 F. Supp. 3d 273, 297 (S.D.N.Y. 2019) (quoting *Raniola v. Bratton*, 243 F.3d 610, 620 (2d Cir. 2001)).

Under the second, more common theory of liability, "the incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Keles v. Davalos*, 642 F. Supp. 3d 339, 368 (E.D.N.Y. 2022) (cleaned up).  In any event, a reasonable employee would likely consider her work environment hostile or abusive when the alleged discriminatory conduct (1) occurred frequently; (2) was severe; (3) involved physical threats or humiliation, rather than petty slights; and (4) unreasonably interfered with her work performance.  *See Paupaw-Myrie v. Mount Vernon City Sch. Dist.*, 653 F. Supp. 3d 80, 105 (S.D.N.Y. 2023) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 321 (2d. Cir. 2015).

Defendants argue, convincingly, that plaintiff's hostile work environment claim fails because Dr. Escorbores's conduct was not severe or pervasive.  Defs.' Mem. at 22–24; Defs.' Reply at 19–20.  For starters, plaintiff's allegation that Escorbores somehow denied "her opportunity to reschedule [an] interview," Compl. ¶ 34, is "conclusory and not entitled to be assumed true."  *See Iqbal*, 556 U.S. at 681.  Considering the remaining allegations, none of the alleged acts are, by themselves, sufficiently severe to support a hostile work environment claim.  *Cf. Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 230 (2d Cir. 2004) (single incident was sufficiently severe where defendants made "racially offensive comments," "spray[ed] [plaintiff] with mace," "punched him in the ribs," and "covered him with shaving cream").

Moreover, considered collectively, plaintiff's list of sporadic allegedly hostile incidents "do[es] not suggest the kind of trauma against which a hostile work environment claim guards."

*See Gonzalez* 377 F. Supp. 3d at 298 (dismissing hostile work environment claims where plaintiff alleged that he "got emails from his boss," did not get the leave he requested, and was ordered to move boxes); *Paupaw-Myrie*, 653 F. Supp. 3d at 105 (plaintiff teacher's allegations that her principal "subjected her to harsher scrutiny," "sent her a condescending email," yelled at her, threatened disciplinary action, denied her transfer request, and forced her to temporarily waive her right to tenure did not support hostile work environment claim); *cf. Lewis v. Roosevelt Island Operating Corp.*, 246 F. Supp. 3d 979, 990 (S.D.N.Y. 2017) (denying motion to dismiss where plaintiff alleged a "pattern of . . . comments and practices . . . that made his job challenging and, in some instances, impossible," such as yelling, giving plaintiff the "silent treatment," and "with[o]ld[ing] information and documents" from plaintiff). Thus, while Francois's objection to the R&R on timeliness is sustained, the R&R's recommendation that the claim be dismissed is adopted as the opinion of this court as modified above.

<u>Conclusion</u>

For the foregoing reasons, the Court substantively sustains plaintiff's objections. Modifying the R&R, Dr. Escorbores's motion to dismiss under Rule 12(b)(5) is denied and defendants' motion to dismiss under Rule 12(b)(6) is granted in part and denied in part. Plaintiff's individual disparate treatment and hostile work environment claims are dismissed, as is her retaliation claims against the District and BOE, while her retaliation claim against Dr. Escorbores survives.

With the retaliation claim against him as the lone surviving claim, Dr. Escorbores and Francois are referred to Magistrate Judge Anne Y. Shields for her continued pretrial management of the proceedings.

So Ordered.

Dated:   Brooklyn, New York
         December 18, 2024


/s/ Eric N. Vitaliano
ERIC N. VITALIANO
United States District Judge